Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission AFFIRMS IN PART and MODIFIES IN PART the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in an I.C. Form 21 Agreement for Compensation which was approved by the Commission on November 17, 1993 and in an I.C. Form 26 Supplemental Agreement which was approved on May 18, 1994, both in I.C. File 379536, and in a Pre-Trial Agreement which was filed on May 30, 1996, and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case; the parties are properly before the Commission; and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. On October 18, 1993, ITT Hartford was the carrier on the risk. On May 10, 1995, and October 23, 1995, Liberty Mutual Insurance Company was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable back injury on October 18, 1993. At the time of the admittedly compensable injury, the plaintiff's average weekly wage was $334.00 which yields a compensation rate of $222.68. The plaintiff was rated as retaining a three percent (3%) permanent partial impairment to his back, for which he received benefits. This claim was assigned I.C. File Number 379536.
5. On or about December 12, 1995, defendant-carrier Liberty Mutual Insurance Company made voluntary payment to the plaintiff in the amount of $5,437.93; said payment was made without prejudice and was not pursuant to an agreement to pay compensation, and [Liberty Mutual alleges that] benefits are not due and payable.
6. The parties submitted sixty-eight pages of medical records into evidence.
7. The issues for determination are:
 a. Whether the plaintiff has sustained a worsening of his back condition on or about May 10, 1995;
 b. Whether the plaintiff has contracted a compensable occupational disease, carpal tunnel syndrome; and
 c. Whether Liberty Mutual Insurance Company or ITT Hartford was the responsible carrier on May 10, 1995.
8. The parties stipulated into evidence the I.C. Form 25R of Dr. Eric L. Rhoton, dated October 10, 1996, in which plaintiff was assigned a three percent (3%) permanent partial impairment for each hand.
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts in part and modifies in part the Findings of Fact of the deputy commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a thirty-four year old male who had prior work experience as an electrician's helper, cable layer, farmer, and school bus driver.
2. The plaintiff began working for the defendant-employer on January 20, 1992 as a maintenance worker. Shortly thereafter, he was trained as a welder and began fabricating industrial fans. The welding process required the plaintiff to hold the fan blade with his left hand while holding the welding gun with his right hand. The plaintiff wore heat resistant gloves on both hands. In order to weld a blade, the plaintiff gripped the handle of the welding gun, squeezed the trigger to make the wire come out, and held the gun steady for about a minute in order to get a bead. The fans being constructed consisted of 6 to 40 blades, all of which plaintiff had to weld. The plaintiff would weld continuously during the shift, making from 10 to 40 units per day.
3. On October 18, 1993, the plaintiff sustained an admittedly compensable injury to his back while lifting a piece of metal. Following the injury, the plaintiff was treated by Dr. Charles J. DePaolo and Dr. Stewart J. Harley at Blue Ridge Bone 
Joint Clinic. He was diagnosed with mild spondylolisthesis of L5 on S1 and bilateral pars defects, foraminal narrowing with possible impingement on the existing L5 nerve root, and a slight generalized disc bulge at the L4-5 level. From January of 1994 through February of 1994, the plaintiff complained of right leg and buttock pain and was given a TENS unit. On April 13, 1994, the plaintiff was released by Dr. Harley, and was found to retain a three percent permanent partial impairment to his back.
4. Dr. Harley opined that the plaintiff's spondylolisthesis with slippage of L5 on S1 was as a result of an abnormality in the bony structure and was definitely not related to the 1993 work injury.
5. Although the plaintiff complained periodically of back pain to his co-workers, he did not seek treatment for his back after his release from the care of Dr. Harley until May 15, 1995.
6. On May 10, 1995, the plaintiff bent over slightly to cut a part and felt a sudden and severe pain in his lower back. The pain was in the same area where he had previously injured his back, and he promptly reported it to his supervisor.
7. Following the May 10, 1995 incident, the plaintiff was treated by Dr. Louis Schroeder, who found the injury to be work-related. Dr. Schroeder authorized the plaintiff to remain out of work until May 15, 1995. However, when the plaintiff returned to work on May 18, 1995, he was unable to perform the job due to back pain which radiated down his leg. Dr. Schroeder thereafter referred the plaintiff to Dr. Rhoton, a neurosurgeon.
8. On June 19, 1995, the plaintiff was seen by Dr. Rhoton, at which time he complained of severe back pain and radiating leg pain which he thought was due to his prior October 1993 injury and his recent re-exacerbation on May 10th. Dr. Rhoton observed about a twenty-five percent slippage of plaintiff's L5 on the S1 vertebral bodies. Plaintiff was taken out of work at that time and on July 24, 1995, Dr. Rhoton performed a lumbar fusion with pedicle screw instrumentation at the L5-S1 level to correct the slippage.
9. The greater weight of the evidence indicates that the plaintiff's back injury of May 10, 1995 was a new injury which aggravated a pre-existing condition, resulting in the July 1995 fusion surgery. While Dr. Rhoton said that the 25% slippage in plaintiff's spine which he observed was not the kind of slippage which would occur in the short period between plaintiff's May 10th injury and May 22th but rather was consistent with the kind of slippage which would have been generated by plaintiff's 1993 injury and would more likely have occurred over the period between October 18, 1993 and May 22, 1995, elsewhere in his deposition, Dr. Rhoton says: "it (meaning the slippage) sounds like it's probably related to some degree to his more recent trauma."
10. The plaintiff was released to light duty part-time work on October 2, 1995, for four hours per day. On October 23, 1995, he was upgraded to four hours per day for six weeks, then six hours for four weeks, and then followed by full duty. Plaintiff was restricted by his doctor to doing whatever work he could tolerate.
11. When the plaintiff returned to work for the defendant on October 2, 1995, he was reassigned to a maintenance job which involved vacuuming, sweeping, cleaning bathrooms, emptying office trash, mopping, and emptying water. This job required plaintiff to bend and to lift in excess of ten pounds.
12. Dr. Rhoton was of the opinion that repetitive bending and twisting were contraindicated following the plaintiff's back surgery and that plaintiff should not lift weight in excess of ten pounds. He further opined that the welding and maintenance jobs were not suitable to plaintiff's work restrictions.
13. During the time plaintiff was out of work for the fusion surgery, he received public assistance benefits and help with paying bills from his neighbors, as the defendants denied his workers' compensation claim. The plaintiff also worked for his neighbor, Leonard Cutshaw, driving a dump truck and installing sewer pipes. The plaintiff was paid $7.00 per hour, on a 20-25
hour per week basis from February 9, 1996 until at least April 18, 1996. Plaintiff's earnings with Mr. Cutshaw are not indicative of his wage-earning capacity.
14. Plaintiff returned to work part-time on or about October 2, 1995.
15. On or about October 23, 1995, the plaintiff began to complain of bilateral hand pain which he stated he had experienced over the last several months. However, the plaintiff had not worked for the defendant-employer since June 16, 1995. Following nerve conduction studies and an EMG performed by Dr. Durham, the plaintiff was diagnosed with bilateral carpal tunnel syndrome.
16. Dr. Rhoton performed bilateral carpal tunnel release surgery on the plaintiff on January 24, 1996, and on October 10, 1996, Dr. Rhoton found the plaintiff had reached maximum medical improvement, and that he retained a three percent (3%) permanent partial impairment to each hand. Dr. Rhoton opined that plaintiff's job placed "him at increased risk" of developing carpal tunnel syndrome than the general public. While Dr. Rhoton related the carpal tunnel symptoms to plaintiff's work with defendant-employer, this opinion is not accepted as credible in light of the fact that the plaintiff had not worked for the defendant since June 16, 1995, and further due to the fact that when the plaintiff returned to work in October, 1995, he worked in a maintenance job where there was absent the repetitive motion work that gives rise to work-related carpal tunnel syndrome.
17. The plaintiff began working with Vocational Rehabilitation to train as a school bus driver, and he also sought jobs as a truck driver. However, as of the date of the hearing before the Deputy Commissioner, the plaintiff had not obtained work other than that of driving for Mr. Cutshaw. Plaintiff has made a reasonable effort to find suitable employment.
18. On April 18, 1996, Dr. Rhoton found plaintiff to be at maximum medical improvement with respect to the back injury, and rated him as retaining a twenty-five percent (25%) permanent partial impairment to the back.
19. On May 10, 1995 plaintiff sustained an injury to his back as a direct result of the work assigned by defendant-employer. Plaintiff's back injury aggravated a pre-existing congenital condition and contributed to his need for fusion surgery.
20. As a result of plaintiff's back injury on May 10, 1995, he has been incapable of earning the same or greater wages in his former employment or any other employment. Although defendants' Exhibit 1 shows that plaintiff returned to work on a part-time basis in June, October, November, and December, 1995 and for a few days in January, 1996, he was forced to stop work on January 19, 1996.
21. The greater weight of the evidence shows that the plaintiff did not suffer an occupation disease in the nature of bi-lateral carpal tunnel syndrome as alleged in I.C. No. 608730.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury as a result of a specific traumatic incident of the work assigned on May 10, 1995, which aggravated a pre-existing congenital condition and contributed to his need for fusion surgery. N.C. Gen. Stat. § 97-2(6).
2. For plaintiff's compensable back injury, plaintiff is entitled to receive from defendants temporary total disability compensation at the rate of $222.68 per week from May 10, 1995, through the date of hearing and continuing until the plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission, except that defendant-employer is entitled to credit for the approximately $140.00 per week which plaintiff received from his employment with Leonard Cutshaw from February 9, 1996 until at least April 18, 1996; for the wages which plaintiff received when he returned to work briefly for defendant-employer October 23, 1995; and for voluntary payment made to plaintiff by defendant-carrier, Liberty Mutual Insurance Co. N.C. Gen. Stat. § 97-29 and § 97-42.
3. The plaintiff has failed to carry the burden of proof to establish that his bilateral carpal tunnel syndrome was caused by his work with the defendant-employer.
4. The plaintiff is entitled to have the defendant-employer pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provided for below, for plaintiff's compensable back injury, defendant-Liberty Mutual Insurance Co. shall pay the plaintiff temporary total disability compensation at the rate of $222.68 per week from May 10, 1995, through the date of hearing and continuing until the plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission, except that defendant-employer is entitled to credit for wages earned by plaintiff when he returned to work briefly on October 23, 1995, for the approximately $140.00 per week which plaintiff received from his employment with Leonard Cutshaw from February 9, 1996 until at least April 18, 1996 and for the voluntary payment already made to plaintiff by defendant-carrier, Liberty Mutual Insurance Co. The accrued amounts shall be paid in a lump sum. N.C. Gen. Stat. § 97-29.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved and shall be paid as follows: twenty-five percent of the accrued compensation shall be deducted and paid directly to plaintiff's counsel; and, thereafter, plaintiff's counsel shall directly receive every fourth check due the plaintiff.
3. Defendant-employer and defendant-carrier Liberty Mutual Insurance Company shall pay all medical expenses incurred or to be incurred in the future by the plaintiff for treatment of plaintiff's back for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
4. Plaintiff's claim for benefits under N.C. Gen. Stat. § 97-53 for bi-lateral carpal tunnel syndrome is and under the law must be DENIED.
5. Defendants shall pay the costs, including the expert witness fee of $486.50 to DR. Eric Rhoton, and $350.00 to Dr. Stewart Harley.
6. It is FURTHER ORDERED that ITT Hartford is DISMISSED as a party-defendant.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ LAURA K. MAVRETIC COMMISSIONER